CASE 14—INDICTMENT FOR GRAND LARCENY—FEB. 27.

## Cooper, &c., v. Commonwealth.

### APPEAL FROM MARION CIRCUIT COURT.

GRANT COOPER AND OTHERS WERE CONVICTED OF GRAND LARCENY AND THEY APPEAL. REVERSED.

LARCENY—OVERPAYMENT BY MISTAKE—SUBSEQUENT INTENTION TO APPROPRIATE.

Held: One who received an overpayment made by mistake, and afterwards converted the excess to his own use, is not guilty of

larceny, unless he knew of the overpayment at the time it was made, and then intended to convert the money to his own use.

GEO. A. PRENTICE FOR APPELLANTS.

The facts in this case show that the four defendants had six silver dollars, which had been paid to them for their work. The money was given to Sandy Waggoner, one of the four, and they all went to the Bank of Uniontown to get the money changed, so they could divide it. Waggoner and Harris went up to the counter, while Grant and Fred Cooper remained at the door. Waggoner handed the cashier two silver dollars and asked for change; the cashier handed him two silver half dollars and a brown paper roll of small coin, saying here is two half dollars for one of your dollars, and small change or nickels for the other; Waggoner received the money in his hand, put it in his pocket and all four left the bank building together, going about four squares to a coal yard and stopped to divide their money, and on opening the roll Waggoner found it to contain twenty gold coins of the value of $5 each, in all $100. He then said: "Boys, there has been a mistake, but banks don't correct mistakes and we will keep what we have got." He then divided the money giving each defendant one-fourth of $105, which they received and used for their own needs.

Upon these facts they were all indicted and convicted of grand larceny, and from this judgment of conviction they appeal.

We claim that this money having been paid to them by mistake, a subsequent appropriation of it is not larceny, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands.

### AUTHORITIES.

2 Bouvier's Law Dictionary, p. 10; 2 Wharton's Crim. Law (6 Ed.), pp. 438, 448, 451; 2 Bishop's Crim. Law, pp. 840, 841, 842; 12 Am. & Eng. Ency. of Law (1 Ed.), pp. 762, 765, 770, 771, 779, 789, 790; Smith v. Com., 96 Ky., 85; Snapp v. Com., 82 Ky., 173; Elliott v. Com., 75 Ky., 176.

ROBT. J. BRECKINRIDGE, ATTORNEY-GENERAL FOR COMMONWEALTH.

I do not believe under the proof in this case, the appellants were or could be guilty of larceny, and therefore I can not ask the court to affirm this judgment.

OPINION OF THE COURT BY JUDGE O'REAR.   REVERSING.

Appellants, Grant Cooper, Fred Cooper, Thomas Harris and Sandy Waggener, were convicted in the Union Circuit Court of the crime of grand larceny, under the fol-

lowing state of facts: The four named had been shucking
corn, and were paid $6 for their services. In order to
divide the money equally among themselves, they went
to the Bank of Uniontown to have $2 of the money changed
into smaller denominations. Appellant, Sandy Waggener,
went into the bank and to the cashier's counter, handed him
the $2 and asked for the change. The cashier handed him
two half dollars and a roll of small-sized coin wrapped in
paper saying, "There are twenty nickels." Waggener,
without unwrapping the coins, and not knowing what was
in the paper, except from the statement of the cashier, re-
joined his companions; and the four together went a dis-
tance of some four squares, to a more secluded spot, to
divide their money. On opening the package they discov-
ered it contained twenty 5-dollar gold coins, instead of
nickels. Waggener remarked, "Boys, banks don't correct
mistakes," and the money was divided among the four
and appropriated by them. Upon this evidence the court
gave the jury the following instruction: "If you believe
from the evidence, to the exclusion of a reasonable doubt,
that in this county, and prior to the finding of the indict-
ment herein, the defendants, Grant Cooper, Fred Cooper
and Thos. Harris and Sandy Waggener, sought to have
some money changed at the Bank of Uniontown in order
to get twenty nickels, or some small change, and that
Chas. Kelleners, the assistant cashier of said bank. in
making said change delivered by mistake to the defend-
ants twenty five-dollar gold pieces, wrapped in a paper,
believing at the time that he was giving them twenty
nickels, and that the defendants, sharing in that belief,
shortly thereafter opened said paper, and found therein
twenty five-dollar gold pieces, and failed to return said
gold pieces to said bank—now, if you further believe from

the evidence, to the exclusion of a reasonable doubt, that when said defendats unwrapped said paper, and found therein, and in their possession, the said five-dollar gold pieces, they knew that same had been delivered to them by said Kelleners through mistake, and knew or had the means of ascertaining that the bank was the owner of said gold pieces, but thereupon nevertheless feloniously converted the same to their own use, intending to premanently deprive the owner thereof, you will find them guilty as charged; and in your verdict you will fix their punishment at confinement in the penitentiary for not less than one nor more than five years." Appellants objected to the foregoing, and asked the court to give the jury these instructions: "(a) The court instructs the jury that, to find the defendants guilty of larceny, they must believe that at the time they received the money from Chas. Kelleners they must have then had the purpose and intent to convert the excess which they received over and above what was justly due them as change to their own use and benefit, and to deprive the bank of its money feloniously; that, unless the felonious intent was proven at the time of receiving the money, the law is for the defendants, and the jury will so find. (b) The court instructs the jury that the felonious intent must exist at the time of receiving the money, and that no felonious intent, subsequent or wrongful conversion, will amount to a felony"—which were rejected by the court.

It was held in Elliott v. Com., 12 Bush, 176, that where the possession of the goods was obtained by the accused for a particular purpose, with the intent then, however, on the part of the accused, to convert them to his own use, which he subsequently did, it would constitute larceny. In Snapp v. Com., 82 Ky., 173, we held that, where

money came into the hands of the accused lawfully, his subsequent felonious conversion would not be larceny. In the last-named case the court said it devolved upon the Commonwealth to show an unlawful taking of this money from the city (the owner) by the accused with a felonious intent, and that "the money had been received without fraud and as a matter of right, and in such a case, although he may have the *animus furandi* afterwards, and convert it to his own use, he was not guilty of larceny." In Smith v. Com., 96 Ky., 87, (27 S. W., 852), this court announced, "The general and common-law rule is that when property comes lawfully into the possession of a person, either as agent, bailee, part owner, or otherwise, a subsequent appropriation of it is not larceny, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands." Whart. Cr. Law, section 958, says, "To constitute larceny in receiving an overpayment, the defendant must know at the time of the overpayment, and must intend to steal." The authorities seem to be agreed that, to constitute the crime of larceny, there must be a simultaneous combination of an unlawful taking, an asportation, and a felonious intent.

We conclude that the instructions asked by appellants should have been given to the jury, and that the idea expressed in the first instruction given—that if appellants received the money under a mutual mistake, and after discovering it feloniously converted it— should not have been given. Judgment reversed and cause remanded for a new trial, and for proceedings consistent herewith.